No. 25-30398

# In the United States Court of Appeals for the Fifth Circuit

UNITED STATES CONFERENCE OF CATHOLIC BISHOPS; THE SOCIETY OF THE
ROMAN CATHOLIC CHURCH OF THE DIOCESE OF LAKE CHARLES; THE
SOCIETY OF THE ROMAN CATHOLIC CHURCH OF THE DIOCESE OF
LAFAYETTE; THE CATHOLIC UNIVERSITY OF AMERICA,

*Plaintiffs-Appellants,*

v.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; ANDREA R. LUCAS,
ACTING CHAIR OF THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, IN
HER OFFICIAL CAPACITY,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Louisiana (Lake Charles)
No. 2:24-cv-691, Hon. David C. Joseph

## MOTION FOR INJUNCTION PENDING APPEAL

JAMES R. CONDE
BOYDEN GRAY PLLC
800 Connecticut Ave. NW
   Suite 900
Washington, DC 20006
(202) 955-0620

DANIEL H. BLOMBERG
LAURA WOLK SLAVIS
ANDREA R. BUTLER
JORDAN T. VARBERG
BENJAMIN A. FLESHMAN
THE BECKET FUND FOR
   RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
   Suite 400
Washington, DC 20006
(202) 955-0095

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

Counsel of record certifies that the following persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiff-Appellant | Counsel for Plaintiff-Appellants |
|---|---|
| <ul><li>United States Conference of Catholic Bishops</li><li>The Society of the Roman Catholic Church of the Diocese of Lake Charles</li><li>The Society of the Roman Catholic Church of the Diocese of Lafayette</li><li>The Catholic University of America</li></ul> | *The Becket Fund for Religious Liberty:*<ul><li>Daniel H. Blomberg</li><li>Laura Wolk Slavis</li><li>Andrea R. Butler</li><li>Jordan T. Varberg</li><li>Benjamin A. Fleshman</li></ul>*Boyden Gray PLLC*<ul><li>Jonathan Berry</li><li>James R. Conde</li></ul> |

| Defendants-Appellees | Counsel for Defendants-Appellees |
|---|---|
| <ul><li>Equal Employment Opportunity Commission</li><li>Andrea R. Lucas, Acting Chair of the Equal Employment Opportunity Commission, in her official capacity</li></ul> | *United States Department of Justice*<ul><li>Jacob S. Siler</li></ul> |

*/s/ Daniel H. Blomberg*
Daniel H. Blomberg
*Counsel for Plaintiffs-Appellants*

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ...........................................i

TABLE OF AUTHORITIES...............................................................iii

INTRODUCTION......................................................................... 1

JURISDICTIONAL STATEMENT .......................................... 4

BACKGROUND ........................................................................ 4

    A. The PWFA expands protections for pregnant workers. .................. 4

    B. The PWFA excludes abortion.......................................................... 5

    C. EEOC mandates abortion accommodation in the Final Rule. ........ 5

    D. EEOC's actions burden the Bishops' religious beliefs..................... 7

    E. Proceedings below. ......................................................................... 9

STANDARD OF REVIEW.................................................................. 12

ARGUMENT .................................................................................. 13

I.  The Bishops have a strong likelihood of success on the merits......... 13

    A. The Bishops are entitled to an injunction under the PWFA's
       religious exemption. ....................................................................... 13

    B. The Bishops are entitled to an injunction under the
       church-autonomy doctrine. ............................................................ 16

    C. The Bishops are entitled to an injunction under RFRA................ 18

II. The Bishops meet the other requirements for an injunction
    pending appeal.................................................................................. 22

CONCLUSION ................................................................................ 23

CERTIFICATE OF SERVICE................................................................. 24

CERTIFICATE OF COMPLIANCE........................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Stephens,*
  822 F.3d 776 (5th Cir. 2016) ................................................................ 21

*Bear Creek Bible Church v. EEOC,*
  571 F. Supp. 3d 571 (N.D. Tex. 2021) .............................................. 14

*Billard v. Charlotte Catholic High Sch.,*
  101 F.4th 316 (4th Cir. 2024) ............................................................ 14

*Braidwood Mgmt. v. EEOC,*
  70 F.4th 914 (5th Cir. 2023) ........................................................ 19, 21

*Bryce v. Episcopal Church,*
  289 F.3d 648 (10th Cir. 2002) ...................................................... 16, 17

*Burwell v. Hobby Lobby Stores, Inc.,*
  573 U.S. 682 (2014) ....................................................................... 19, 21

*Catholic Benefits Ass'n v. Lucas,*
  No. 1:24-cv-142, 2025 WL 1144768
  (D.N.D. Apr. 15, 2025) ................................................................. 11, 18

*Cooper/T. Smith Stevedoring Co. v. Liuzza,*
  293 F.3d 741 (5th Cir. 2002) .............................................................. 15

*Curay-Cramer v. Ursuline Acad.,*
  450 F.3d 130 (3d Cir. 2006) ......................................................... 14, 16

*Duquesne Univ. v. NLRB,*
  947 F.3d 824 (D.C. Cir. 2020) ........................................................... 18

*EEOC v. Catholic Univ. of Am.,*
  83 F.3d 455 (D.C. Cir. 1996) ............................................................. 18

*EEOC v. Miss. Coll.,*
  626 F.2d 477 (5th Cir. 1980) ............................................................. 14

iii

*Fellowship of Christian Athletes v. SJUSD,*
  82 F.4th 664 (9th Cir. 2024) ............................................. 22

*Fitzgerald v. Roncalli High Sch.,*
  73 F.4th 529 (7th Cir. 2023) ............................................. 14

*Franciscan All. v. Becerra,*
  47 F.4th 368 (5th Cir. 2022) ................................. 19, 20, 22

*Fulton v. City of Philadelphia,*
  593 U.S. 522 (2021) ........................................................ 21

*Gonzales v. O Centro,*
  546 U.S. 418 (2006) ........................................................ 21

*Hall v. Baptist Mem'l Health Care,*
  215 F.3d 618 (6th Cir. 2000) ............................................. 16

*Jennings v. Rodriguez,*
  583 U.S. 281 (2018) ........................................................ 15

*Korte v. Sebelius,*
  735 F.3d 654 (7th Cir. 2013) ............................................. 15

*Little Sisters of the Poor v. Pennsylvania,*
  591 U.S. 657 (2020) .................................................... 19, 20

*Little v. Wuerl,*
  929 F.2d 944 (3d Cir. 1991) ............................................. 16

*Louisiana v. EEOC,*
  705 F. Supp. 3d 643 (W.D. La. 2024) ......................... *passim*

*Mahmoud v. Taylor,*
  606 U.S. —, 2025 WL 1773627
  (U.S. June 27, 2025) ........................................................ 22

*McAllen Grace Brethren Church v. Salazar,*
  764 F.3d 465 (5th Cir. 2014) ........................................ 20, 21

*McClure v. Salvation Army,*
  460 F.2d 553 (5th Cir. 1972) ............................................. 18

iv

*NAACP v. Tindell,*
  95 F.4th 212 (5th Cir. 2024) ............................................................ 12

*Nken v. Holder,*
  556 U.S. 418 (2009) ......................................................................... 23

*Opulent Life Church v. City of Holly Springs,*
  697 F.3d 279 (5th Cir. 2012) ............................................................ 23

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
  591 U.S. 732 (2020) ........................................................... 15, 16, 17-18

*Serbian E. Orthodox Diocese v. Milivojevich,*
  426 U.S. 696 (1976) ......................................................................... 18

*Stanley M. Herzog Found. v. EEOC,*
  No. 4:24-cv-651, 2025 WL 1734470
  (W.D. Mo. Mar. 18, 2025) ....................................................... 11, 18, 22

*Starkey v. Roman Catholic Archdiocese of Indianapolis,*
  41 F.4th 931 (7th Cir. 2022) ............................................................ 14

*Tennessee v. EEOC,*
  129 F.4th 452 (8th Cir. 2025) ..................................................... 19, 22

*Texas v. EEOC,*
  No. 2:24-cv-173, 2025 WL 1414332
  (N.D. Tex. May 15, 2025) ............................................................ 11, 22

*Ware v. La. Dep't of Corr.,*
  866 F.3d 263 (5th Cir. 2017) ........................................................ 20-21

*Williams v. Taylor,*
  529 U.S. 362 (2000) ......................................................................... 15

## Statutes

28 U.S.C. §1291 ................................................................................. 4

28 U.S.C. §1292 ................................................................................. 4

42 U.S.C. §2000bb-1 .......................................................................... 19

42 U.S.C. §2000e ................................................................ 5, 13

42 U.S.C. §2000e-1 ............................................................ 5, 13

42 U.S.C. §2000gg ............................................................. 4, 10

42 U.S.C. §2000gg-1 .......................................................... 4, 6

42 U.S.C. §2000gg-2 ........................................................... 4

42 U.S.C. §2000gg-5 ......................................................... 4, 7

## Other Authorities

29 C.F.R. §1636.3 ............................................................. 6, 22

168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022) ......................... 5

88 Fed. Reg. 54,714 (Aug. 11, 2023) ...................................... 5

89 Fed. Reg. 29,096 (Apr. 19, 2024) ............................... *passim*

Catechism of the Catholic Church .......................................... 8

Luke W. Goodrich, *Religious Hiring Beyond the Ministerial Exception*, 101 Notre Dame L. Rev. (forthcoming 2026) .................... 14

## INTRODUCTION

For the first time in our nation's history, the federal government has imposed a mandate requiring Catholic ministries to broadly accommodate abortion in their ministries. But unlike every other religious ministry in the country to challenge that mandate in federal court, the Catholic parties to this appeal (the "Bishops") have not been protected, leaving them exposed to substantial burdens on their millennia-old religious beliefs in the innate dignity of all human life. Immediate relief is required.

The Pregnant Workers Fairness Act promotes healthy mothers and babies by requiring employers to accommodate employees' medical conditions associated with pregnancy and childbirth. The PWFA doesn't say a word about abortion. And its lead sponsors on both sides of the aisle emphasized it had nothing to do with abortion. Yet EEOC imposed a Final Rule requiring covered employers to accommodate *all* abortions—including religious employers like the Bishops. So the Bishops sued for protection of their religious beliefs.

The ruling below leaves those beliefs unprotected. To be sure, it held that the PWFA does not require accommodation for "purely elective abortions," vacating that portion of EEOC's rule. But it nonetheless ordered that employers are "required" by the PWFA itself "to provide accommodation" for "abortions stemming from the underlying treatment of a medical condition related to pregnancy." Under EEOC's Final Rule, that includes conditions like a mild case of anxiety.

Further, and despite acknowledging their well-documented and millennia-old religious objections, the court refused to grant injunctive relief as to any of the Bishops' religious defenses that would have protected them from its ruling, including under the PWFA's own explicit religious exemption, the First Amendment's church-autonomy doctrine, and the Religious Freedom Restoration Act (RFRA). And it modified a previous injunction that it had granted under the religious exemption to remove that basis for relief, leaving the Bishops unprotected.

Taken together, the Bishops are facing a first-of-its-kind mandate, requiring them to either jettison longstanding beliefs concerning abortion or be in violation of federal law, with all the entangling lawsuits, investigations, and enforcement actions that can produce.

The Diocesan appellants serve Catholic communities that have existed in Louisiana since the 1750s. Appellant CUA was papally chartered in 1887. Never once in that time has the federal government imposed a mandate to accommodate abortion within their ministries. But now, the district court's order requires them to accommodate any employee, former employee, or job applicant who can gesture toward one of EEOC's expansive examples of pregnancy-related conditions to justify an abortion. Under the Final Rule's plain text, the Bishops also have a legal duty to change their religiously rooted policies, practices, and statements of faith to reflect the abortion-accommodation requirement.

To date, all other religious parties that have sought preliminary or permanent injunctive relief from federal courts on this issue are fully protected, including from private parties using EEOC to enforce abortion accommodations. EEOC has not appealed those judgments. Yet EEOC took a different tack with the Bishops, declining their request to agree, for the pendency of this case, to the same protections that were provided in the unappealed judgments from other courts.

To protect their rights, the Bishops then moved in the district court for an injunction pending appeal and to expedite resolution of that motion. Instead, the district court *sua sponte* gave EEOC more than double the default time afforded under the local rules to respond.

Left unprotected and having exhausted all options, the Bishops respectfully request an injunction pending appeal that prevents EEOC from (1) interpreting or enforcing the PWFA or its implementing regulations or guidance against the Bishops in a way that would require them to accommodate abortions in violation of their religious beliefs; (2) initiating investigations against the Bishops regarding allegations that they have not accommodated abortions; and (3) issuing any Notice of Right to Sue letters based on claims or charges that the Bishops have failed to accommodate abortions. *See* ECF 125-1 (FRAP 8 motion describing precise relief).[1] This tracks the relief other religious parties have received.

---

[1]    ECF references are to the district court docket.

3

## JURISDICTIONAL STATEMENT

On May 21, 2025, the district court entered a partial final judgment on the Bishops' claims under Federal Rule of Civil Procedure 54(b), refused to grant the Bishops an injunction, and modified the basis of a previous injunction. ECF 114. This Court has jurisdiction to review the final judgment under 28 U.S.C. §1291, and the denial of and modification of an injunction under 28 U.S.C. §1292.

## BACKGROUND

### A. The PWFA expands protections for pregnant workers.

Congress passed the PWFA to expand protections for pregnant women in the workplace. The PWFA requires a "covered" employer to provide a reasonable accommodation to an employee with a "known limitation," meaning a "physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions." 42 U.S.C. §2000gg(2), (4); *id.* §2000gg-1(1). The statute bars employers from denying employment opportunities or taking adverse employment action based on pregnancy accommodations. *Id.* §2000gg-1(2)-(5). It also prohibits retaliating against an employee who advocates for an accommodation or interfering with an employee's exercise of her statutory rights. *Id.* §2000gg-2(f)(1)-(2).

The PWFA incorporates Title VII's religious exemption. *Id.* §2000gg-5(b). Title VII exempts religious employers from any application of that law concerning "the employment of individuals of a particular religion,"

*Id.* §2000e-1(a), and defines "religion" to include "all aspects of religious observance and practice, as well as belief." *Id.* §2000e(j).

## B. The PWFA excludes abortion.

The bipartisan bills that became the PWFA never mentioned abortion, and not a single legislative supporter claimed abortion was covered. To the contrary, "lawmakers from both sides of the aisle expressly stated that the PWFA does not address abortion." *Louisiana v. EEOC*, 705 F. Supp. 3d 643, 660 (W.D. La. 2024). Senator Bob Casey, the Senate co-lead sponsor, stated "for the record" that EEOC "could not—could not—issue any regulation that requires abortion leave." 168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022). Senator Bill Cassidy, PWFA's other lead sponsor, likewise "reject[ed] the characterization that [the PWFA] would do anything to promote abortion." *Id.*

## C. EEOC mandates abortion accommodation in the Final Rule.

In August 2023, EEOC issued a Notice of Proposed Rulemaking mandating abortion accommodations under the PWFA. 88 Fed. Reg. 54,714 (Aug. 11, 2023). More than 54,000 comments opposed this mandate, including one from Appellants USCCB and CUA. *See* 89 Fed. Reg. 29,096, 29,104 (Apr. 19, 2024); ECF 1-3. Legislators also admonished that the Final Rule "ignored the statute and substituted its views on abortion for those of Congress." ECF 77-2, Ex. 2 at 1. Yet EEOC's Final Rule included the mandate. 89 Fed. Reg. 29,096.

The Final Rule concedes the "lack of an explicit mention of abortion in the PWFA." *Id.* at 29,111. But it claims abortion is required because abortion is a "medical condition" related to pregnancy or childbirth. *Id.* at 29,183, 29,186 (citing 42 U.S.C. §2000gg-1(1)). The Final Rule's expansive, "non-exhaustive" list of covered medical conditions includes even "modest" or "minor" cases of "antenatal … anxiety, depression," "gestational diabetes," "endometriosis," "carpal tunnel syndrome," "dehydration," "nausea or vomiting," "loss of balance," and "changes in hormone levels." 29 C.F.R. §1636.3(a)(2), (b).

The Final Rule also requires that the PWFA's retaliation and coercion provisions "be interpreted broadly" to cover anything that "might have dissuaded a reasonable worker" from seeking an abortion accommodation. 89 Fed. Reg. at 29,215; *accord id.* at 29,214-18. Employers may be liable unless their "ordinary workplace policies or practices" pose no obstacle to such accommodations. *Id.* at 29,199.

To that end, employers cannot "issu[e] a policy or requirement that purports to limit an employee's rights to invoke PWFA protections." *Id.* at 29,216. Speech opposing such accommodations in employers' "statements regarding religious beliefs," "mission statements," or "code[s] of conduct" can be illegal. *Id.* at 29,141-42, 29,142 n.201. Employers cannot "indicat[e]" that abortion accommodations may yield adverse employment action, or otherwise do or say things that might be understood to "harass" an applicant, employee, or former employee for seeking such an

accommodation—even if the alleged actions did not "actually … deter[]" them. *Id.* at 29,216. Employers also cannot say or do things that "interfere with any individual" supporting such accommodations. *Id.* at 29,188. And to ensure that no "discriminatory work … atmosphere" exists, employers must monitor "unwelcome" employee speech against these accommodations. *Id.* at 29,214, 29,218.

Finally, the Final Rule states that EEOC will address an employer's religious defenses on a "case-by-case" basis after a charge has been filed. *Id.* at 29,147-53. While the PWFA includes an express religious exemption that broadly protects religious employers from being required to violate their faith in their workplace policies, 42 U.S.C. §2000gg-5(b), the Final Rule adopted a limited interpretation that protects only against claims of *religious* discrimination. 89 Fed. Reg. at 29,146-47, 29,147 n.239. That class of claims is not authorized by the PWFA. The Final Rule predicted that defenses under RFRA and the First Amendment would fail because EEOC has sufficiently compelling interests. *Id.* at 29,147-49, 29,151-53.

### D. EEOC's actions burden the Bishops' religious beliefs.

Appellants are USCCB, CUA, the Diocese of Lake Charles, and the Diocese of Lafayette (collectively, the Bishops). The Dioceses serve the Catholics and communities of southern Louisiana, where Catholics have resided since the mid-1750s. ECF 83-4 ¶5. CUA was papally chartered in 1887 and is "the national university of the Catholic Church in the United

States" that is "committed to being a comprehensive Catholic institution of higher education that is faithful to the teachings of the Church." ECF 90-2 ¶¶6-7. USCCB is an association of the bishops of the Catholic Church in the United States whose "mission is to support the ministry of bishops with an emphasis on evangelization." ECF 83-5 ¶¶8, 13.

The Bishops follow the doctrine of the Catholic Church, which teaches that all people, including the preborn, are created in the image and likeness of God and are thus imbued with inviolable human dignity. ECF 83-3 ¶¶10-11; ECF 90-2 ¶¶15-16; ECF 83-2 ¶¶6-7; ECF 83-4 ¶¶6-7. The Church further teaches that "direct abortion, that is, abortion willed as an end or as a means, always constitutes a grave moral disorder, since it is the deliberate killing of an innocent human being." ECF 83-3 ¶16. The Church forbids the faithful from in any way supporting or encouraging direct abortion or being complicit in the actions of those who do. *Id.* ¶¶14-22; Catechism of the Catholic Church §§2270-71.

The Bishops follow these religious teachings and do not allow their employees (or, in the case of CUA, its faculty) to speak and act in ways that conflict with those beliefs within their ministries, such as by advocating for abortion. ECF 83-3 ¶¶54-56; ECF 83-5 ¶¶28-35; ECF 90-2 ¶¶26-31; ECF 83-2 ¶¶10-15; ECF 83-4 ¶¶10-15.

## E. Proceedings below.

On May 22, 2024, the Bishops sued and sought a preliminary injunction of the abortion mandate, which the district court granted after consolidating the case with another brought by Louisiana and Mississippi. *Louisiana*, 705 F. Supp. 3d at 651.

The district court found a likelihood of success on two grounds: a violation of the APA by imposing an abortion-accommodation mandate contrary to the PWFA's text, and a violation of the broad statutory religious exemption granted to the Bishops. On the first ground, the district court rejected EEOC's attempt to read an abortion mandate into the PWFA as "semantic gymnastics" and "a textbook case of a federal administrative agency exceeding its statutory authority." *Id.* at 658-61. On the second ground, the court explained that EEOC had "failed to include a broad religious exception in the Final Rule," which "d[id] not square with the PWFA" and left the Bishops exposed to "protracted investigations and litigation." *Id.* at 662-63. The analysis "conclude[d] the *Bishops* Plaintiffs have demonstrated a substantial likelihood of success on their claims of statutory and constitutional overreach." *Id.* at 663. Accordingly, the court postponed the effective date of the abortion-accommodation mandate's application to the Bishops, the States, and certain employers within the States, and preliminarily enjoined EEOC from taking steps to enforce it against the Bishops, including by issuing notices of rights to sue. *Id.* at 664.

In early October 2024, the parties filed dispositive cross-motions. The Bishops sought summary judgment on most of their claims, including their APA claim that EEOC failed to give proper scope to PWFA's statutory religious exemption; their constitutional claim that the EEOC's interpretation of the PWFA violates the church-autonomy doctrine; and their RFRA claim. ECF 77. In response to EEOC's arguments that the PWFA covers abortions, the Bishops explained that this reading was irreconcilable with the statutory text; even if it were not, it only highlighted the need to give the Bishops' religious defenses their full scope— including the exemption baked into the PWFA itself. *See* ECF 77-1 at 8-21. Briefing completed in early December.

On May 21, 2025, the district court granted the Bishops' motion in part, vacating the Final Rule's abortion mandate as to "purely elective" abortions. ECF 113 at 38-40. But the court ruled that the employers like the Bishops were "required to provide accommodation" for all other abortions. ECF 114 at 3 n.1. The court held that the PWFA statute itself required that "abortions stemming from the underlying treatment of a medical condition related to pregnancy" must be accommodated because "[s]uch procedures are clearly 'related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions.'" *Id.* (citing 42 U.S.C. §2000gg(4)).

The Court also refused to grant the Bishops injunctive relief under the PWFA's religious exemption, the First Amendment, or RFRA, despite issuing an order making them subject to a legal duty in violation of those laws. ECF 113 at 35 & n.23.[2] Further, the court modified its previous preliminary-injunction order, stating that it had relied on the PWFA's religious exemption only to show standing and had not issued any ruling on the merits of the exemption. ECF 113 at 34; *but compare* ECF 53 at 12-16 (preliminary injunction standing section recounting only RFRA and First Amendment law) *with id.* at 26-29 (preliminary-injunction likelihood of success section, relying only on the PWFA statutory exemption).

The summary-judgment order set a status conference to discuss the remaining claims on June 17, 2025. There, the Bishops learned that the district court did not intend to reconsider injunctive relief before another round of summary judgment briefing, which it later scheduled to start in late August and conclude in late September. ECF 119. The Bishops also negotiated with EEOC for temporary protections during the pendency of

---

[2]   The Court refused to grant relief under the religious exemption in part because the Acting Chair had issued a statement claiming that she wishes to reconsider portions of the Final Rule once EEOC regains a quorum. ECF 113 at 34. Three other district courts have rejected this line of reasoning as a basis for delaying action. *See Catholic Benefits Ass'n v. Lucas*, No. 24-cv-00142, 2025 WL 1144768, at *3 (D.N.D. Apr. 15, 2025); *Stanley M. Herzog Found. v. EEOC*, No. 4:24-cv-651, 2025 WL 1734470, at *6 (W.D. Mo. Mar. 18, 2025); *Texas v. EEOC*, No. 24-cv-173, 2025 WL 1414332, at *8 (N.D. Tex. May 15, 2025).

the litigation. After those efforts failed on July 9, the Bishops filed a motion for injunction pending appeal in the district court on July 15. ECF 125-1. In the motion, the Bishops asked the court to expedite resolution in light of the sensitive rights at stake, the substantial previous briefing on the issues, and EEOC's previous requests to resolve the issues based on existing briefing. *Id.* On July 16, before EEOC filed a response, the district court denied expedition, and *sua sponte* gave EEOC 30 days to respond to the motion and the Bishops 14 days to reply. ECF 126. The default deadline to respond to a motion is 14 days, with 7 days to reply. W.D. La. Local Rule 7.4.

Simultaneously with the injunction pending appeal, the Bishops timely appealed the district court's summary judgment order. ECF 124. The Bishops now move in this Court for an injunction pending the resolution of this appeal. EEOC again stated today, July 21, that it would not agree to the full requested relief.

## STANDARD OF REVIEW

An injunction pending appeal is appropriate where the party seeking the injunction demonstrates "(1) a strong likelihood of success on the merits; (2) irreparable injury in the absence of an injunction; (3) that the balance of hardships weighs in their favor if injunctive relief is granted; and (4) that the public interest favors such relief." *NAACP v. Tindell*, 95 F.4th 212, 215 (5th Cir. 2024).

# ARGUMENT

## I. The Bishops have a strong likelihood of success on the merits.

### A. The Bishops are entitled to an injunction under the PWFA's religious exemption.

The PWFA's religious exemption broadly exempts religious employers who object on religious grounds to PWFA accommodations that would violate their beliefs. But the Final Rule writes the exemption out of the statute, interpreting it to exempt only claims for *religious* discrimination—which cannot even be brought under the PWFA in the first place. *See* 89 Fed. Reg. at 29,146-47. The Bishops therefore have a very strong likelihood of showing that the Final Rule violates the PWFA—just as the district court's original injunction concluded that they already had. *Louisiana*, 705 F. Supp. 3d at 662.

"[T]he PWFA directly incorporates Title VII's religious exemption and makes the entire PWFA 'subject to' [it.]." *Louisiana*, 705 F. Supp. 3d at 662. Title VII's exemption in turn states: "This *subchapter*," meaning *all of Title VII*, "shall not apply to … a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion." 42 U.S.C. §2000e-1(a) (emphasis added). Title VII also defines "religion" as "*all aspects* of religious *observance and practice*, as well as belief." 42 U.S.C. §2000e(j) (emphases added). "Title VII thus exempts religious entities from the requirements of the entire 'subchapter'—*e.g.*, all of Title VII, not merely one category of claims—

protecting religious employers from *any* Title VII claim if an employer made an employment decision based on an individual's particular religious belief, observance, or practice." *Louisiana*, 705 F. Supp. 3d at 662.

Many courts, including this one, have applied Title VII's religious exemption to bar *sex*-discrimination claims when the challenged decision is made for sincere religious reasons. *See EEOC v. Miss. Coll.*, 626 F.2d 477, 485-86 (5th Cir. 1980) (prohibiting Title VII sex-discrimination investigation where a religious employer "applied its policy of preferring Baptists over non-Baptists"); *Curay-Cramer v. Ursuline Acad.*, 450 F.3d 130, 132, 141 (3d Cir. 2006) (similar); *Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571, 591 (N.D. Tex. 2021) (similar). Several federal appellate judges agree: "[W]hen [an employment] decision is founded on religious beliefs, then all of Title VII drops out." *Starkey v. Roman Catholic Archdiocese of Indianapolis*, 41 F.4th 931, 946 (7th Cir. 2022) (Easterbrook, J., concurring); *accord Fitzgerald v. Roncalli High Sch.*, 73 F.4th 529, 535 (7th Cir. 2023) (Brennan, J., concurring); *Billard v. Charlotte Catholic High Sch.*, 101 F.4th 316, 335 (4th Cir. 2024) (King, J., concurring); *accord* Luke W. Goodrich, *Religious Hiring Beyond the Ministerial Exception*, 101 Notre Dame L. Rev. (forthcoming 2026) (manuscript at 19-26), https://perma.cc/SXM5-B76C.

The same principles apply to the PWFA: a religious employer does not have to provide PWFA accommodations where doing so would require ac-

commodating beliefs, observances, or practices that conflict with the employer's religion. Under those circumstances, the exemption shields the employer from *any* type of PWFA claim.

But "EEOC contends that the PWFA exemption protects religious entities from claims of religious discrimination only." *Louisiana*, 705 F. Supp. 3d at 662 (citing 89 Fed. Reg. at 29,146-47). This illogical position cannot be squared with the PWFA, which doesn't even allow for religious-discrimination claims. Thus, EEOC's interpretation simultaneously violates two "cardinal principle[s] of statutory construction": "that [courts] must give effect, if possible, to every clause and word of a statute," *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (internal quotation marks omitted), and that they cannot "render" statutory language "meaningless." *Cooper/T. Smith Stevedoring Co. v. Liuzza*, 293 F.3d 741, 746 (5th Cir. 2002).

Even if the exemption's scope were ambiguous, constitutional-avoidance principles require rejecting EEOC's narrow reading. *See Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018). Specifically, EEOC's interpretation would violate the "principle of church autonomy," *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 747 (2020), as explained below.

Indeed, Title VII's religious exemption, incorporated wholesale into the PWFA, is a "legislative application[] of the church-autonomy doctrine," *Korte v. Sebelius*, 735 F.3d 654, 678 (7th Cir. 2013), which

"recogni[zes] … the constitutionally-protected interest of religious organizations in making religiously-motivated employment decisions," *Hall v. Baptist Mem'l Health Care*, 215 F.3d 618, 623-24 (6th Cir. 2000). Given "the constitutional concerns that would be raised by a contrary interpretation" of the religious exemption, courts have repeatedly "read [it] broadly" to allow religious employers "to employ only persons whose beliefs and conduct are consistent with the employer's religious precepts." *Little v. Wuerl*, 929 F.2d 944, 951 (3d Cir. 1991); *accord Curay-Cramer*, 450 F.3d at 137-39; *Hall*, 215 F.3d at 623-24.

### B. The Bishops are entitled to an injunction under the church-autonomy doctrine.

The First Amendment's "principle of church autonomy" also requires an injunction protecting the Bishops. *Our Lady*, 591 U.S. at 747. This autonomy safeguards "the right of religious institutions 'to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine,'" *id.* at 737, and protects religious institutions when they "mak[e] decisions regarding their own internal affairs" on "matters of faith, doctrine, church governance, and polity," *Bryce v. Episcopal Church*, 289 F.3d 648, 655 (10th Cir. 2002). The Bishops have a strong likelihood of success, because EEOC's Final Rule and the judgment below violate church autonomy in *four* ways.

*First*, the Bishops are compelled to retain employees who violate their faith, such as by seeking accommodations for certain abortions. *See* ECF

113 at 39 & n.24; 89 Fed. Reg. at 29,106, 29,112, 29,187 (employer cannot discriminate "based on" the "decision[] to have … an abortion"). But "[w]hen a church makes a personnel decision based on religious doctrine," the "broader church autonomy doctrine" protects that decision. *Bryce*, 289 F.3d at 657-58, 658 n.2, 660.

*Second*, the Bishops are compelled to change their and their employees' speech about matters of faith and doctrine. EEOC bans any policy that "purports to limit an employee's rights to invoke PWFA protections," 89 Fed. Reg. at 29,216; *see id.* at 29,199, and requires "statements regarding religious beliefs," "mission statements," and "code[s] of conduct"—as well as "unwelcome" employee speech—to be sanitized of anything that might "dissuade" an employee from requesting a PWFA accommodation, *id.* at 29,141-42 & n.201, 29,214-18. That violates "rights of the church to discuss church doctrine and policy freely" and to engage in "internal church dialogue" about "religious topics." *Bryce*, 289 F.3d at 658-59.

*Third*, the Bishops are subject to pervasive governmental scrutiny. EEOC "broadly" interprets its authority, allowing it to regulate everything from the "atmosphere" of the Church's internal ministry to the Bishops' "ordinary workplace policies or practices" to anything else that "might" discourage "a reasonable worker" from seeking abortion accommodations that violate the Bishops' faith. 89 Fed. Reg. at 29,199, 29,214-15. This pervasive scrutiny impinges matters of "internal government" which are "essential to the [Bishops'] central mission," *Our Lady*, 591

17

U.S. at 746-47, and sifts "nearly everything that goes on" in the Church, *Duquesne Univ. v. NLRB*, 947 F.3d 824, 829 (D.C. Cir. 2020). That all requires "a searching and therefore impermissible inquiry" into religious affairs. *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 723 (1976).

*Fourth*, the Bishops must endure entangling investigations into religious matters about abortion. The Final Rule subjects the Bishops to "case-by-case" review of their religious policies and practices, 89 Fed. Reg. at 29,145-51—guaranteeing "bureaucratic entanglement" that will "inevitably affect" how they carry out their religious missions. *EEOC v. Catholic Univ. of Am.*, 83 F.3d 455, 467 (D.C. Cir. 1996). EEOC's intrusive "investigation and review" of such religious "practices and decisions" will unconstitutionally "intrude upon matters of church administration and government." *McClure v. Salvation Army*, 460 F.2d 553, 560 (5th Cir. 1972).

## C. The Bishops are entitled to an injunction under RFRA.

The Bishops also have a strong likelihood of success under RFRA. Every other court to consider this issue has agreed that RFRA protects the religious challengers and has entered an injunction materially indistinguishable from the one the Bishops seek. *See Catholic Benefits Ass'n*, 2025 WL 1144768, at *4; *Herzog Found.*, 2025 WL 1734470, at *14. Further, RFRA has repeatedly protected religious employers from similar

federal regulatory mandates regarding abortion, contraception, and sterilization. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 696 & n.5 (2014); *Little Sisters of the Poor v. Pennsylvania*, 591 U.S. 657, 664-74 (2020); *Franciscan All. v. Becerra*, 47 F.4th 368, 371 (5th Cir. 2022).

Under RFRA, the federal government may not "substantially burden a person's exercise of religion" unless that burden is the "least restrictive means" of furthering a "compelling governmental interest." 42 U.S.C. §2000bb-1(a)-(b). The Final Rule flunks that test.

***Substantial Burden.*** EEOC's Final Rule burdens the Bishops' free exercise by forcing them to "choose between two untenable alternatives": knowingly accommodate actions and advocacy contrary to their religious beliefs within their ministries, or risk significant liability and years-long expensive and entangling litigation by both the EEOC and private parties. *Braidwood Mgmt. v. EEOC*, 70 F.4th 914, 937 (5th Cir. 2023); *see* ECF 90-2 ¶¶26-32; ECF 83-2 ¶¶11-16; ECF 83-4 ¶¶10-16; ECF 83-5 ¶¶27-36. As *Braidwood* recognized, "[b]eing forced to employ someone to represent [a] company who behaves in a manner directly violative of the company's convictions is a substantial burden," as is being forced to "broadly change" its religious "employment policies" and "tacitly endorse" behavior "it sees as sinful." 70 F.4th at 938.

This burden is already accruing because the Bishops must "comply wholeheartedly with the [rule] [they] see[] as sinful" *now* by law. *Id.*; *Tennessee v. EEOC*, 129 F.4th 452, 458 (8th Cir. 2025). And EEOC has

"steadfastly refused to promise" that it will not enforce its interpretation against them. *Franciscan All.*, 47 F.4th at 377. EEOC fought even a brief delay of the effective date of the abortion-accommodation mandate, *see* ECF 29 at 24-25, ECF 51 at 8-9; and has refused to agree to even a temporary injunction with terms identical to those already ordered in similar cases.

**Compelling Interest.** EEOC cannot prove its rule furthers an interest "of the highest order." *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 472 (5th Cir. 2014). "'[G]eneral statements of its interests' are not sufficient"; EEOC must demonstrate that the interests are compelling as applied "to the person whose sincere exercise of religion is being seriously impaired." *Id.*

EEOC fails this test, merely asserting a general interest in "eliminat[ing] discrimination and promot[ing] women's health and economic security." ECF 75-1 at 33. That isn't specific to the Bishops but instead reflects the kind of "[g]eneral statements" that fail as a matter of course. *McAllen*, 764 F.3d at 472.

Indeed, no underlying governmental interest exists at all: the PWFA's sponsors repeatedly *denied* they were imposing an abortion mandate, and a denied interest is not a compelling one. *Little Sisters*, 591 U.S. at 697 (Alito, J., concurring). EEOC also "leaves appreciable damage to [its] supposedly vital interest unprohibited," which shows that the "government's claimed interest isn't actually so compelling after all." *Ware v. La.*

*Dep't of Corr.*, 866 F.3d 263, 269 (5th Cir. 2017). The PWFA exempts employers with fewer than 15 employees, exempting about 80 percent of private employers and millions of employees. 89 Fed. Reg. at 29,151; *see* ECF 77-2 ¶6, Ex. 5 at 1-2. EEOC also exempts *any* employer facing an "undue hardship" from complying with the Final Rule. 89 Fed. Reg. at 29,205. EEOC cannot exempt these entities while claiming "that its non-discrimination policies can brook no departures" for the Bishops. *Fulton v. City of Philadelphia*, 593 U.S. 522, 542 (2021).

**Least Restrictive Means.** EEOC also cannot show it has used the "least restrictive means" of achieving its interests. *Gonzales v. O Centro*, 546 U.S. 418, 423 (2006). This requires EEOC to prove "it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting parties." *Hobby Lobby*, 573 U.S. at 728. The government must also show—with "*actual evidence*," *McAllen*, 764 F.3d at 476—"that it considered the claimant's proposed alternatives," and that "those alternatives are ineffective," *Ali v. Stephens*, 822 F.3d 776, 786 (5th Cir. 2016).

EEOC claims its "case-by-case" approach to religious defenses is the least-restrictive means. But *Braidwood* itself identified plausible less restrictive alternatives, 70 F.4th at 940 n.59, and the Bishops did so as well, *See* ECF 77-1 at 31. The existence of such alternatives, combined with the lack of evidence that EEOC even considered them, means EEOC again flunks RFRA's "heavy burden." *McAllen*, 764 F.3d at 475-76.

## II. The Bishops meet the other requirements for an injunction pending appeal.

*Irreparable harm.* As with all other religious challengers to the Final Rule, the Bishops have demonstrated irreparable harm. "[T]he loss of freedoms guaranteed by the First Amendment … and RFRA … constitute per se irreparable harm," *Franciscan All.*, 47 F.4th at 380, even if lost only for "minimal periods of time," *Mahmoud v. Taylor*, 606 U.S. —, 2025 WL 1773627, at *24 (U.S. June 27, 2025). Irreparable harm is thus "relatively easy to establish in a First Amendment case," with the party only needing to demonstrate "a colorable First Amendment claim." *Fellowship of Christian Athletes v. SJUSD*, 82 F.4th 664, 694-95 (9th Cir. 2024) (en banc).

The need for relief here is particularly clear. The order below imposed a first-of-its kind mandate to accommodate any abortion other than "purely" elective ones. ECF 114 at 2, 3 n.1. And under EEOC's regulations, a "modest" or "minor" case of "anxiety" or "nausea" or "changes in hormone levels" can be enough to require abortion accommodation. 29 C.F.R. §1636.3(a)(2), (b). This requires the Bishops not only to accommodate abortions, but also to immediately change ministry policies, practices, and statements of faith to make that clear. *See Tennessee*, 129 F.4th at 457-58 (noting compliance burdens); ECF 77-1 at 3-7 (detailing the requirements on Bishops); *accord Herzog Found.*, 2025 WL 1734470, at *4. If they don't, a single EEOC commissioner can initiate proceedings

against the Bishops at any time, as can any of the over 300,000 entities nationwide who opposed the Bishops' relief below. *See* ECF 31-2; ECF 34-1 *Texas*, 2025 WL 1414332, at *8 (possibility of single-commissioner charge established injury).

***Remaining Factors.*** The factors of "harm to the opposing party and weighing the public interest … merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both factors favor the Bishops because "[i]njunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 298 (5th Cir. 2012). And it's particularly clear here, where EEOC has not appealed the permanent injunction granting identical relief to other Catholic plaintiffs with identical beliefs.

## CONCLUSION

The Court should grant an injunction pending appeal.

Dated:    July 21, 2025

JAMES R. CONDE
BOYDEN GRAY PLLC
800 Connecticut Ave. NW
   Suite 900
Washington, DC 20006
(202) 955-0620

Respectfully submitted,

*/s/ Daniel H. Blomberg*
DANIEL H. BLOMBERG
LAURA WOLK SLAVIS
ANDREA R. BUTLER
JORDAN T. VARBERG
BENJAMIN A. FLESHMAN
THE BECKET FUND FOR
   RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
   Suite 400
Washington, DC 20006
(202) 955-0095

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF SERVICE

I certify that on July 21, 2025, I electronically filed the foregoing with the Clerk of Court for the U.S. Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. All counsel of record who are registered CM/ECF users will be served by the court's electronic filing system. Further, I have emailed copies of the filings to counsel for Appellees who have appeared below, Jacob S. Siler (Jacob.S.Siler@usdoj.gov) and Shannon Smitherman (Shannon.Smitherman@usdoj.gov).

I further certify that I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following case participants:

Jacob S. Siler
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, N.W.
Washington, DC 20005

Shannon Smitherman
U.S. Attorney's Office (SHV)
300 Fannin Street Ste 3201
Shreveport, LA 71101-3068

*/s/ Daniel H. Blomberg*
Daniel H. Blomberg

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2) because it contains 5,200 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft 365 (the same program used to calculate the word count).

*/s/ Daniel H. Blomberg*
Daniel H. Blomberg

Dated:    July 21, 2025