No. 25-30398

# In the United States Court of Appeals for the Fifth Circuit

UNITED STATES CONFERENCE OF CATHOLIC BISHOPS; SOCIETY OF THE ROMAN CATHOLIC CHURCH OF THE DIOCESE OF LAKE CHARLES; SOCIETY OF THE ROMAN CATHOLIC CHURCH OF THE DIOCESE OF LAFAYETTE; CATHOLIC UNIVERSITY OF AMERICA,

*Plaintiffs-Appellants,*

v.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; ANDREA R. LUCAS,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Louisiana (Lake Charles)
No. 2:24-cv-691, Hon. David C. Joseph

## REPLY BRIEF OF APPELLANTS

JAMES R. CONDE
WALKER FORTENBERRY
BOYDEN GRAY PLLC
800 Connecticut Ave. NW
   Suite 900
Washington, DC 20006
(202) 955-0620

DANIEL H. BLOMBERG
LAURA WOLK SLAVIS
ANDREA R. BUTLER
JORDAN T. VARBERG
BENJAMIN A. FLESHMAN
THE BECKET FUND FOR
   RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
   Suite 400
Washington, DC 20006
(202) 955-0095

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... iii

INTRODUCTION .......................................................................... 1

ARGUMENT ................................................................................ 3

I. The PWFA's text does not require abortion accommodation or authorize EEOC to require it. ........................................... 3

   A. EEOC agrees that the PWFA does not impose an abortion-accommodation mandate, and it does not dispute that its Final Rule violated the major questions doctrine. ............................................................. 4

   B. The district court's contrary judgment should be reversed and permanent relief granted. ........................... 6

      1. EEOC's "best reading" of the district court's ruling is wrong. ........................................................ 7

      2. The district court wrongly denied the Bishops relief as against both the Final Rule and the PWFA statute. ................................................... 9

      3. The Bishops are entitled to relief now. ................. 12

II. EEOC does not dispute that the Bishops are protected by the PWFA's religious exemption, the First Amendment, and RFRA. ............................................................................ 17

   A. The Court has jurisdiction to grant permanent relief. ........ 17

   B. The Court should grant the Bishops relief under the PWFA's religious exemption. ...................................... 20

   C. The Bishops are entitled to a permanent injunction under their RFRA and First Amendment claims. ............. 27

CONCLUSION ............................................................................ 29

CERTIFICATE OF SERVICE ....................................................... 30

CERTIFICATE OF COMPLIANCE ............................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Appalachian Power v. EPA,*
208 F.3d 1015 (D.C. Cir. 2000) ............................................................ 14

*Braidwood Mgmt. v. EEOC,*
70 F.4th 914 (5th Cir. 2023) ............................................................... 13

*Biden v. Texas,*
597 U.S. 785 (2022) ............................................................................ 15

*Burwell v. Hobby Lobby Stores,*
573 U.S. 682 (2014) ............................................................................ 22

*Carson v. Makin,*
596 U.S. 767 (2022) ............................................................................ 23

*Clarke v. CFTC,*
74 F.4th 627 (5th Cir. 2023) ......................................................... 15, 16

*Corp. of Presiding Bishop v. Amos,*
483 U.S. 327 (1987) ............................................................................ 21

*El Paso Elec. Co. v. FERC,*
76 F.4th 352 (5th Cir. 2023) ...............................................................

*FEC v. Cruz,*
596 U.S. 289 (2022) ............................................................................ 10

*In re Fort Worth Chamber of Com.,*
100 F.4th 528 (5th Cir. 2024) ............................................................. 19

*Franciscan All. v. Becerra,*
553 F. Supp. 3d 361 (N.D. Tex. 2021) ................................................ 10

*Franciscan All. v. Becerra,*
47 F.4th 368 (5th Cir. 2022) ............................................................... 10

*Franciscan All. v. Burwell*,
227 F. Supp. 3d 660 (N.D. Tex. 2016) ................................................. 13

*Hall v. Baptist Mem'l Health Care*,
215 F.3d 618 (6th Cir. 2000) ................................................................. 24

*Hishon v. King & Spalding*,
467 U.S. 69 (1984) ................................................................................. 21

*Hosanna-Tabor v. EEOC*,
565 U.S. 171 (2012) .......................................................................... 22, 23

*Kisor v. Wilkie*,
588 U.S. 558 (2019) ............................................................................... 25

*Korte v. Sebelius*,
735 F.3d 654 (7th Cir. 2013) ................................................................ 24

*Landor v. La. Dep't of Corr.*,
No. 23-1197, 2026 WL 1791277
(U.S. June 23, 2026) .............................................................................. 27

*Lexmark Int'l v. Static Control Components*,
572 U.S. 118 (2014) ............................................................................... 12

*Loc. No. 93 v. City of Cleveland*,
478 U.S. 501 (1986) ............................................................................... 13

*Mann Constr. v. United States*,
86 F.4th 1159 (6th Cir. 2023) ............................................................... 11

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) ............................................................... 21

*McRaney v. N. Am. Mission Bd.*,
157 F.4th 627 (5th Cir. 2025) ............................................................... 24

*Mock v. Garland*,
75 F.4th 563 (5th Cir. 2023) ................................................................. 16

*Moore v. Tangipahoa Par. Sch. Bd.*,
864 F.3d 401 (5th Cir. 2017) ................................................................ 17

*Nat'l Republican Senatorial Comm. v. FEC*,
No. 24-621, 2026 WL 1868932
(U.S. June 30, 2026)................................................................14

*Starkey v. Roman Catholic Archdiocese*,
41 F.4th 931 (7th Cir. 2022) ..............................................21

*Tennessee v. EEOC*,
129 F.4th 452 (8th Cir. 2025) ............................................13

*Tex. Med. Ass'n v. HHS*,
110 F.4th 762 (5th Cir. 2024) ............................................20

*Tex. Med. Providers v. Lakey*,
667 F.3d 570 (5th Cir. 2012)..............................................19

*Texas v. Biden*,
20 F.4th 928 (5th Cir. 2021) ..............................................20

*Texas v. United States*,
50 F.4th 498 (5th Cir. 2022) ..............................................11

*Trump v. Cook*,
No. 25A312, 2026 WL 1855613
(U.S. June 29, 2026)............................................................11

*Tucker v. Gaddis,*
40 F.4th 289 (5th Cir. 2022) ..............................................15

*West Virginia v. EPA*,
597 U.S. 697 ..........................................................................6

**Statutes**

5 U.S.C. § 703 ..........................................................................11

5 U.S.C. § 706 ..........................................................................20

28 U.S.C. § 1292........................................................................17

42 U.S.C. § 2000bb................................................................22-23

42 U.S.C. § 2000bb-1 ...................................................................23

42 U.S.C. § 2000e.........................................................................20

42 U.S.C. § 2000e-1 ............................................................... 20, 21

42 U.S.C. § 2000gg-3 ...................................................................21

42 U.S.C. § 2000gg-5 ............................................................ 20, 21

**Other Authorities**

29 C.F.R. § 1601.28......................................................................14

29 C.F.R. § 1636.3.................................................................... 4, 8

89 Fed.Reg. 29,096 (Apr. 19, 2024) .................................... *passim*

*FY 2025 Agency Performance Report*, EEOC (2025) ..............................25

*Revisions to the Pregnant Workers Fairness Act Regulations*,
    Regul. Info. Serv. Ctr. (July 2026) .....................................................15

## INTRODUCTION

EEOC's Final Rule does two things here: it interprets the PWFA to mandate abortion accommodation, and it interprets the PWFA's religious exemption into a nullity. EEOC vigorously defended both for years. And it had significant success: the district court's judgment left both injuries to the Bishops in place, agreeing with the EEOC's interpretation that the PWFA "clearly" "required" abortion accommodation, and restoring EEOC's evisceration of the statutory exemption by modifying an injunction that had previously enforced it. Coupled with the largely untouched Final Rule, that left the Bishops subject to a federal mandate to transform their ministries to support abortions sought even for "minor" conditions.

Now, facing the prospect that this Court might bind its hands and give the Bishops permanent protection, EEOC acknowledges that its Final Rule is wrong regarding the statutory abortion mandate and doesn't even attempt to defend the merits of the Final Rule's exemption evisceration.

Those are welcome changes. They are also facially insufficient. That's because, after making some favorable statements in its brief, EEOC still seeks to affirm the judgment below. That result would leave the Final Rule almost entirely intact and create no impediment to interpreting or enforcing the PWFA to impose an abortion mandate. In other words, it would bless the outcome EEOC has sought from Day 1: a nationwide statutory abortion mandate and no statutory religious exemption.

1

Nor does EEOC's suggested deletion of a footnote in the judgment solve the problem. The Bishops seek an injunction and declaration against the Final Rule and the PWFA itself confirming that there *isn't* a statutory duty to accommodate abortion within their churches and that there *is* a broad statutory right to operate those churches consistent with their faith. Vacating the footnote does neither of those things. The Bishops would still face enforcement actions and False Claims Act exposure.

EEOC's new concessions regarding other religious defenses illustrate the problem. Those concessions purport to reflect only EEOC's current position on its governmental interests, which means they bind neither future administrations nor private parties, both of whom can point to express contrary language in the Final Rule and its supporting regulations. Worse, EEOC doesn't raise the defenses to support a judgment *protecting* the Bishops, but rather to urge this Court *not* to issue such protection.

Perhaps unsurprisingly, the defenses that EEOC raises as red herrings are qualitatively weaker than the categorical one Congress provided in the PWFA itself. EEOC's preferred defenses are balancing tests, requiring judges to balance a party's asserted interests against the Bishops' right to govern their churches on a case-by-case basis. But Congress's religious exemption struck the balance already, granting a threshold statutory immunity against PWFA claims that violate the Bishops' religious beliefs.

For over a decade, religious organizations like the Little Sisters of the Poor have been forced to litigate to protect against attempts to use agency regulations to make them cover abortifacients. That has been a heavy tax on their federal civil and constitutional rights, and it still is. *Pennsylvania v. Little Sisters of the Poor*, No. 25-2575 (3d Cir. argued July 7, 2026). Two years ago, EEOC saw this burden on religious organizations as an example to follow instead of a warning to heed. And even now, EEOC seeks a result which prioritizes regulatory flexibility over statutory and constitutional fidelity. That outcome would be—like the outcome below—unlawful. This Court should not hesitate to say so.

The judgment below should be reversed, and the district court should be instructed to vacate the abortion accommodation mandate and EEOC's unlawful narrowing of the statutory religious exemption and to grant the Bishops declaratory and injunctive relief permanently preventing EEOC from interpreting or enforcing the PWFA to impose the mandate against them.

## ARGUMENT

### I. The PWFA's text does not require abortion accommodation or authorize EEOC to require it.

While EEOC now largely agrees that the PWFA does not authorize an abortion-accommodation mandate or the Final Rule, it strives to preserve the district court's opinion and judgment below holding that the PWFA imposes just such a mandate. EEOC is wrong.

3

**A. EEOC agrees that the PWFA does not impose an abortion-accommodation mandate, and it does not dispute that its Final Rule violated the major questions doctrine.**

EEOC's current backpedaling from its previous positions, while welcome, cannot fix the problems those previous positions yielded in the district court and that its current regulations continue to require. Consistent with EEOC's arguments below, the district court ruled that the PWFA itself forces the Bishops to accommodate all abortions, save those that are "purely elective." Br.13 (citing ROA.9167-68, 9168 n.1). Under EEOC's binding regulations, this ruling requires the Bishops to accommodate, and not take action against, any employee who seeks virtually any abortion, so long as the employee gestures at any of a host of myriad pregnancy-related conditions—including ones present in every pregnancy. Br.14 (citing 29 C.F.R. §1636.3(a)(2), (b)). The ruling also requires the Bishops to immediately and radically change the religious policies, procedures, statements of faith, and "atmosphere" within their churches and ministries to adopt the broadly pro-abortion standards resulting from the district court's order and EEOC's regulations. 89 Fed.Reg. 29,096, 29,141-42 & n.201, 29,214-18 (Apr. 19, 2024). Those devastating consequences must be corrected.

For years before the district court, EEOC defended to the hilt its argument that the PWFA's phrase "'related medical conditions' includes abortion," such that "the text of the PWFA itself covers abortions," both "'elective' and 'non-elective.'" ROA.5870; ROA.5873-74 (cleaned up); *see*

*also* ROA.678-82. And because it viewed this statutory text as clear, EEOC repeatedly claimed that the major questions doctrine is not "implicated" because EEOC was simply "enforcing policy decisions made by Congress itself." ROA.5874 (cleaned up); ROA.682-83.

To say that EEOC has (for the time being) reversed course on this statutory-construction point is an understatement. Now, facing this Court, EEOC agrees that every tool of statutory construction leads to the same conclusion: the PWFA does not cover abortion. Full stop.

EEOC no longer disputes that, textually, abortion is a "procedure," not a "condition[]" for which the PWFA requires accommodation. Br.19-22. And EEOC instead "agrees" that, textually, "abortion is not a related medical condition for which an employer must provide an accommodation under the PWFA." Opp.23. It further agrees that the legislative history doesn't support an abortion-accommodations mandate, since "if Congress had intended for the PWFA to cover accommodations for employees seeking abortions, it would have said so expressly." Opp.21; *see* Br.22-23. That Congress didn't do so is hardly surprising, since "[t]he bipartisan PWFA was designed to accomplish [the] simple, uncontroversial goal [of] ensuring that pregnant and postpartum women receive the accommodations they need at work[, not] to take sides in controversial abortion policy debates." Congressional Br.1-2.

5

EEOC also never disputes that requiring the Bishops to accommodate abortion violates the major questions doctrine twice over, Br.23-26, triggering the doctrine because it both implicates matters of deep "political significance," *West Virginia v. EPA*, 597 U.S. 697, 721(2022), and overrides structural limitations set by the Religion Clauses, Manhattan Inst. Br.10-12 (describing how courts have required clear statements before infringing church autonomy since the Founding). Nor could EEOC argue otherwise, given that the doctrine's application is all the "stronger … when Congress regulates matters that hold a 'unique place in American history and society'—religious liberty being foremost among them." Manhattan Inst. Br.6, 8-9 (collecting cases). EEOC's attempt to set nationwide abortion policy through a statute that does not mention abortion even once is precisely the type of gambit the doctrine prevents.

## B. The district court's contrary judgment should be reversed and permanent relief granted.

But as much ground as EEOC has ceded (for now, and only in a brief) about the text of the PWFA and the infirmities of the Final Rule, it still urges this Court to affirm the judgment below, which it contends "provide[s] complete relief to plaintiffs." Opp.22, 37.

To be sure, this urging is half-hearted. EEOC concedes that the district court's judgment is in important respects "oblique," "vaguely worded," and "cursory." Opp.2, 18. And so EEOC does not object to vacating a footnote in that judgment. *Id.* But it argues that anything more

6

would be (1) inconsistent with the government's "best reading" of the judgment below, (2) beyond the relief the Bishops requested, and (3) unnecessary given the imagined lack of "meaningful risk" to the Bishops from a federal mandate to accommodate abortion. Each argument fails.

### 1. EEOC's "best reading" of the district court's ruling is wrong.

EEOC briefly suggests that the "best reading" of the judgment below is that the court did not construe the PWFA statute to impose an independent obligation to accommodate any abortions. Opp.17-18. That reading suffers from a number of infirmities, not least that EEOC said the opposite about how to understand the judgment both to the district court and to this Court just last summer. ROA.9298 (describing the judgment as "limiting its applicability to only 'purely elective abortions'"); Dkt.40 at 4 (same).

Indeed, the only way EEOC reaches its new interpretation is by simply ignoring that both the district court's opinion and its final judgment expressly cabined the ruling solely to "purely elective" abortions. ROA.9164 & n.24; ROA.9167-68, 9168 n.1. And the court was explicit—again, both in its opinion and the final judgment—that it vacated EEOC's regulations only "to the extent that they require or suggest to employers that they are required to provide employees with accommodation for purely elective abortions." ROA.9164 & n.24; ROA.9167-68, 9168 n.1. Both the opinion and the judgment held that this limitation was based on the

7

PWFA statute itself, which "clearly" provided that employers are "required" to accommodate "abortions stemming from the underlying treatment of a medical condition related to abortion." ROA.9164 & n.24; ROA.9167-68, 9168 n.1. Further, as EEOC doesn't dispute, this means that the existing, unvacated parts of the Final Rule require accommodating most abortions and broadly changing internal ministry policies and practices on abortion. 29 C.F.R. §1636.3(a)(2), (b).

EEOC attempts to minimize the importance of this result by misrepresenting the Bishops' position below, contending they described the disputed category of abortions as "vanishingly small." Opp.26 (quoting ROA.5953). Not so. The Bishops made this statement in response to EEOC's argument concerning the narrow set of abortions that are connected to pregnancy "complications that threaten a woman's life or health." ROA.681. It said no such thing about the vast number of abortions that the judgment below requires the Bishops to accommodate— any abortion that an employee says is needed to alleviate "modest" or "minor" symptoms of "anxiety" and "depression," "dehydration," "nausea or vomiting," "loss of balance," and even "changes in hormone levels." 29 C.F.R. §§1636.3(a)(2), 1636.3(b). Regardless, even a "small" (by EEOC's lights) statutory abortion mandate would still require transforming the Bishops' ministries to make them pro-abortion—which is no small thing at all.

8

**2. The district court wrongly denied the Bishops relief as against both the Final Rule and the PWFA statute.**

EEOC next argues that the judgment "afforded full relief on the Bishops' APA challenge to the abortion-accommodation requirement." Opp.30. To the contrary, the ruling below granted transparently insufficient relief—enshrining the mandate into the statute itself, leaving the Bishops exposed to enforcement under the Final Rule's expansive definitions of "medical condition," and denying the requested injunctive and declaratory relief that would have redressed those injuries.

EEOC's argument is largely built on the mistaken premise that the Bishops sought relief from *only* the Final Rule and not the PWFA. But Count I of the Bishops' complaint specifically requested "injunctive and declaratory relief against the Final Rule *and against the PWFA*, as interpreted and enforced by EEOC." ROA.67 (emphasis added). The Bishops have maintained from the beginning that even "[i]f the Final Rule is vacated" they would still need injunctive and declaratory relief against the PWFA itself to protect against "EEOC's interpretation and enforcement of the PWFA to cover abortion." ROA.65. And Count I is the very same count that the district court resolved in its partial final judgment, including by expressly rejecting the Bishops' request for injunctive relief in addition to vacatur. *See* ROA.9156 (entering "judgment as a matter of law on Count I of the [Bishops'] Complaint"); ROA.9160 n.23 (similar); ROA.9162-63 (rejecting injunctive relief).

9

Further, contrary to EEOC's contentions, the Bishops are entitled to relief against both the statute and the regulation, as in *Franciscan Alliance v. Becerra*, 47 F.4th 368 (5th Cir. 2022). There, the plaintiffs challenged an HHS rule interpreting Section 1557 of the ACA's prohibition of "discrimination on the basis of sex." *Id.* at 372. At summary judgment, the district court "found that Franciscan Alliance's complaint had challenged Section 1557 in addition to the 2016 Rule," and "enjoined HHS 'from interpreting or enforcing Section 1557 … or any implementing regulations thereto' against Franciscan Alliance" to violate its religious exercise. *Id.* at 373. Simply vacating the challenged rule would be "insufficient" because it would not fully protect the plaintiffs from future applications of the underlying statute that would violate their rights. *Franciscan All. v. Becerra*, 553 F. Supp. 3d 361, 377 (N.D. Tex. 2021).

HHS appealed, arguing that it was improper to enjoin the agency from taking action under the statute when the only thing HHS thought had been challenged was the agency's rule. *Franciscan All.*, 47 F.4th at 377-78. This Court affirmed the district court's injunction because "a challenge to an agency regulation is necessarily a challenge to the underlying statute as well." *Id.* at 378. Thus, "the right way to view the plaintiffs' suit [is] as challenging '*one* Government action that causes their harm: the Government's threatened enforcement of the statute, *through* its implementing regulation.'" *Id.* (quoting *FEC v. Cruz*, 596 U.S. 289, 302 (2022)) (cleaned up).

This Court has approved similar relief under the APA. *See, e.g., Texas v. United States*, 50 F.4th 498, 528-29 (5th Cir. 2022) (affirming vacatur of agency action and entry of an injunction that "prohibit[ed]" the agency from further taking actions in a manner contrary to statutory authority because "[n]othing" in the statute "authorizes" such actions); *cf. Mann Constr. v. United States*, 86 F.4th 1159, 1163 (6th Cir. 2023) ("The APA thus permits a [plaintiff] to seek an injunction or declaratory judgment preventing [an agency] from enforcing rules" inconsistent with federal law, citing 5 U.S.C. §703). Which is no surprise, since the APA allows such relief. 5 U.S.C. §703 (authorizing "declaratory judgments" and "prohibitory or mandatory injunction" as relief under the APA); *cf. Trump v. Cook*, No. 25A312, 2026 WL 1855613, at *11 n.2 (U.S. June 29, 2026) (noting further that courts have "often" allowed equitable relief even "without a congressionally-provided cause of action 'to prevent an injurious act by a public officer'").

Such relief is appropriate here. The Bishops' APA challenge encompassed not just EEOC's unlawful regulation, but also its application of the PWFA to require abortion accommodations. *See* ROA.65. And the district court refused to give the Bishops that relief under the APA, including by expressly rejecting their requested injunction and by incorrectly declaring the meaning of the PWFA. *See* ROA.9161-62. Without the Bishops' requested declaratory and injunctive relief, they remain exposed to

11

substantial liability if they do not require their ministries to begin supporting abortion, while EEOC remains free to take further actions interpreting the statute to include abortions—just as it said in the Federal Register and has emphasized during this litigation. Indeed, EEOC can easily point to the district court's opinion and its judgment as proof-positive that the statute requires just that.

Nor would merely vacating a footnote in the judgment give the Bishops the relief they requested in Count I. That wouldn't resolve the district court's opinion stating that the PWFA "clearly" requires abortion accommodation. It would allow EEOC to reach that same conclusion on its own. It would leave the Bishops exposed to liability. And it would leave intact the Final Rule's expansive provisions, including its definition of "medical condition," to support efforts by EEOC and private parties to re-make the "atmosphere" of the Bishops' churches pro-abortion.

### 3. The Bishops are entitled to relief now.

Finally, EEOC contends that full relief is simply unnecessary because the Bishops do not face any "meaningful risk" of harm. Opp.19, 26-27. EEOC offers no legal authority for applying its made-up "meaningful risk" standard to justify ignoring this Court's "virtually unflagging" duty to decide the case before it. *Lexmark Int'l v. Static Control Components*, 572 U.S. 118, 126 (2014). And it invokes that novel standard after failing on similar arguments here and in its other (unappealed) PWFA losses over standing, ripeness, and a credible threat of enforcement.

Regardless, EEOC's "meaningful risk" arguments fail on their own terms. *First*, EEOC misapprehends the extent of the Bishops' injury. EEOC prefers to focus on whether there's a "conceivable prospect" of being forced to "provide any [abortion] accommodation," but that ignores the broad scope of EEOC's mandate. Opp.17. In addition to accommodating abortions, the Bishops must radically change their internal ministry policies, practices, speech, and "atmosphere" regarding abortion *right now* to avoid liability and False Claims Act exposure. *See* Br.7, 11, 50-51; *Franciscan All. v. Burwell*, 227 F. Supp. 3d 660, 673 (N.D. Tex. 2016) (noting "false claims liability" among enforcement pressures).

Indeed, the Eighth Circuit just rejected similar EEOC arguments regarding this same rule precisely because the Final Rule "compels [employers] … to change their employment practices and policies, and to refrain from pro-life messaging that arguably would be 'coercive' and thus proscribed by the Rule." *Tennessee v. EEOC*, 129 F.4th 452, 458 (8th Cir. 2025). And courts have on "numerous occasions" recognized that this kind of pre-enforcement "voluntary compliance" is the "preferred means of achieving the objectives" of statutes like "Title VII." *Loc. No. 93 v. City of Cleveland*, 478 U.S. 501, 515 (1986). Thus, even if EEOC's "meaningful risk" standard existed, the Bishops easily meet it because the Bishops' "employment policies must broadly change, and [they] must tacitly endorse" abortion *today*—long before enforcement proceedings commence. *Braidwood Mgmt. v. EEOC*, 70 F.4th 914, 938 (5th Cir. 2023).

That's also true because, as EEOC concedes, the district court's temporary injunction below leaves the Bishops exposed to private enforcement of the mandate. Opp.27 n.3. Over the Bishops' objection, and as EEOC requested, that injunction allows EEOC to issue notice-of-right-to-sue letters which provide "[a]uthorization to the aggrieved person to bring a civil action under … the PWFA" against the Bishops. 29 C.F.R. §1601.28(e)(1). And, as EEOC argued below, lawsuits by private parties can impose "the same … injuries," "the same alleged compliance obligations," and the "same legal obligations" as EEOC enforcement. ROA.7595; ROA.6839. Indeed, amici filed multiple briefs below opposing injunctive relief so they and others could enforce the PWFA against the Bishops. *See* ROA.823; ROA.750-51; ROA.7562; ROA.9076-77. This "threat of private enforcement" further shows that risks to the Bishops remain "very much alive." *Nat'l Republican Senatorial Comm. v. FEC*, No. 24-621, 2026 WL 1868932, at *4 (U.S. June 30, 2026).

*Second*, EEOC claims that it "has indicated that it plans to rescind" the Rule. Opp.17. But changing the Final Rule wouldn't fix the judgment below, which rests on the PWFA itself. And "[t]he fact that a law may be altered in the future has nothing to do with whether it is subject to judicial review at the moment." *Appalachian Power v. EPA*, 208 F.3d 1015, 1022 (D.C. Cir. 2000). That's why multiple federal courts have found the sole evidence EEOC cites—one Commissioner's tentative statement, Opp.10—insufficient to delay relief. *See* Br.35 (collecting cases).

14

The same is also true for EEOC's brand new (and curiously timed) notice that, in November, it plans to "propose" to "revise" some aspects of its Final Rule, including as it relates to "interpretation of the words 'pregnancy, childbirth, or related medical conditions.'"[1] Again, that notice—which is silent on abortion and religion—can't fix the judgment below and its interpretation of the PWFA. Nor does the "possibility" that EEOC "could—or actually does—reverse course in the future" alter the finality of its Final Rule, *Clarke v. CFTC*, 74 F.4th 627, 639 (5th Cir. 2023), relieve the Bishops from the "rights or obligations" already set by that rule, *Biden v. Texas*, 597 U.S. 785, 808 (2022), or pass the "stringent" test for mootness, *Tucker v. Gaddis*, 40 F.4th 289, 292 (5th Cir. 2022). As this Court has emphasized, "agencies cannot play the 'administrative law shell-game' of offering 'future rulemaking as a response to a claim of agency illegality.'" *El Paso Elec. Co. v. FERC*, 76 F.4th 352, 366 (5th Cir. 2023).

If anything, EEOC's ever-changing regulatory flexibility only highlights again why the Bishops need permanent relief as against the Final Rule *and* the PWFA. It also indicates that now is a particularly good time for this Court to provide EEOC guidance on the binding meaning of the PWFA.

---

[1] *See Revisions to the Pregnant Workers Fairness Act Regulations*, Regul. Info. Serv. Ctr. (July 2026), https://perma.cc/Y4Y7-9FRP.

*Third*, EEOC suggests that, because the Bishops partially prevailed on their motion for an injunction pending appeal, the permanent injunction sought in the appeal itself is unnecessary. *See* Opp.27. Setting aside the difference between temporary and permanent relief, accepting that kind of one-way ratchet would turn Rule 8 of the Federal Rules of Appellate Procedure into a liability instead of a protection—justifying *denying* a permanent injunction, but not granting one. EEOC unsurprisingly cites no supporting authority, and numerous cases are to the contrary. *See, e.g.*, *Mock v. Garland*, 75 F.4th 563, 567 (5th Cir. 2023) (granting injunction pending appeal, then reversing denial of injunction on the merits); *Clarke,* 74 F.4th at 635 (similar).

Even if EEOC's novel theory were correct, it wouldn't apply here because—as EEOC concedes—the injunction granted for the pendency of this appeal rejected the Bishops' request to enjoin EEOC from issuing private parties permission slips to sue the Bishops.[2]

In short, none of EEOC's arguments for denying full relief has merit. This Court should thus provide the Bishops with the declaratory and injunctive relief they sought under Count I and the district court rejected.

---

[2] EEOC's only counter is to suggest the Bishops abandoned this issue, Opp.27 n.3, but they have raised it at every stage of this litigation. *See, e.g.*, ROA.1080-82 (preliminary injunction oral argument); ROA.878 (supplemental preliminary injunction briefing after argument); ROA.989-90 (opposing reconsideration of injunction); ROA.6902, 6930 (original summary judgment briefing); ROA.9192, 9200 (injunction pending appeal); Br.34 n.3 (merits appeal). Indeed, those efforts were initially successful; it was only at the injunction-pending-appeal stage that the Bishops were denied this protection and exposed to EEOC authorizing private parties to sue them.

## II. EEOC does not dispute that the Bishops are protected by the PWFA's religious exemption, the First Amendment, and RFRA.

This Court can and should grant the Bishops relief on their other claims on appeal, particularly under the PWFA's religious exemption. EEOC's arguments to the contrary, often little more than misdirection, are factually and legally wrong.

### A. The Court has jurisdiction to grant permanent relief.

This Court has jurisdiction to grant the Bishops permanent injunctive relief on their other statutory and First Amendment claims under 28 U.S.C. §1292(a)(1), which allows this Court to review any order modifying or denying an injunction. The order here does both. Br.31-35.

*Modification.* The district court modified the substance of its initial preliminary injunction by abandoning the injunction's grant of relief under the PWFA's religious exemption. Br.12-14, 31-33. This substantial modification of the preliminary injunction "chang[ed] the command of the injunction," *Moore v. Tangipahoa Par. Sch. Bd.*, 864 F.3d 401, 405 (5th Cir. 2017), and required the Bishops to seek an injunction pending appeal where this Court "recogniz[ed] the grave First Amendment interests at stake," Br.14-15.

Given that history, EEOC has little response beyond simply asserting that the injunction wasn't modified. Opp.31. And what little it says is unpersuasive. For instance, it gestures to the district court's statement that the modified preliminary injunction would "remain in place." Opp.30

17

(quoting ROA.9165). But of course what the court left "in place" was the weakened injunction that required emergency relief while this appeal proceeded.

EEOC also claims that the district court "bifurcated summary judgment proceedings" to avoid reaching the religious exemption in its summary judgment order. Opp.10. But that citation-free assertion is wrong. To the contrary, the parties proposed "a single round of dispositive motions," ROA.968, which the scheduling order adopted by requiring each party to "file only one (1) dispositive motion, which shall set forth all of that party's grounds for or theories of relief," ROA.981. The parties also successfully obtained a page-limit extension on the dispositive motions because they "involve important issues of law, including First Amendment claims" and "multiple federal statutes." ROA.5829; ROA.5841. And both sides then sought judgment on the religious exemption in their dispositive cross-motions and fully briefed the issue. *See, e.g.*, ROA.5960-64; ROA.6862-65; ROA.6909-16; ROA.7608-10. The summary judgment order itself explicitly acknowledged that the parties had raised "[t]he lawfulness of the scope of the Final Rule's religious exemption." ROA.9159.

Finally, EEOC suggests that the district court "retain[ed] jurisdiction" over all the Bishops' claims aside from Count I, and that the Bishops "raised" those other claims in a motion currently pending below. Opp.30-31. But that's both factually wrong, Br.14-15 (explaining abortion-related claims are before this Court and non-abortion ones below), and legally

18

misguided, *Tex. Med. Providers v. Lakey*, 667 F.3d 570, 573 (5th Cir. 2012) (declining to defer interlocutory review of injunction order even though the district court had "proceeded apace toward consideration of summary judgment"). Section 1292 would lose important value if a modified injunction could never be reviewed on appeal where aspects of the case remained ongoing in the district court.

Thus, this Court has jurisdiction to review the district court's modification of the preliminary injunction protection for the Bishops under the PWFA's religious exemption.

*Effective Denial.* This Court also has jurisdiction over the other religion claims on appeal because the district court's order had the "'practical effect' of … denying an injunction." *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 533 (5th Cir. 2024); Br.33-35. The court explicitly "decline[d]" to grant permanent injunctive relief against EEOC's mandate and has since stayed proceedings below pending resolution of an appeal that will not resolve the Bishops' claims. ROA.9160; Br.35.

EEOC's only rejoinders are ones refuted above: suggesting the district court *did* grant full relief, and that obtaining an injunction pending appeal short-circuits getting permanent relief on appeal. Thus, the district court's effective refusal to protect the Bishops' religious beliefs from the abortion-accommodation mandate means this Court has jurisdiction.

## B. The Court should grant the Bishops relief under the PWFA's religious exemption.

The PWFA's religious exemption provides a threshold immunity that exempts the Bishops from applications of the PWFA that violate their religious beliefs. Br.36-37 (citing 42 U.S.C. §§2000e-1(a), 2000e(j); 42 U.S.C. §2000gg-5(b)). EEOC does not dispute this straightforward textual conclusion. Opp.36. Nor does it dispute that its own Final Rule "narrow[s]" the exemption "to the point of uselessness, exempting religious organization from religious-discrimination claims that cannot be brought under the PWFA in the first place." Texas Br.7. Instead, EEOC urges the Court not to correct the Final Rule's error at all. Opp.36.

At the outset, EEOC's bid to dodge review flouts the APA, which provides that when (as here) an agency unlawfully "short[ens]" a "statutory right," a court "shall"—not may—"set [it] aside." 5 U.S.C. §706(2)(C). For that reason, this Court has repeatedly held that the APA not only "empowers" but "*commands*" courts "to 'set aside' unlawful agency actions." *Tex. Med. Ass'n v. HHS*, 110 F.4th 762, 779 (5th Cir. 2024) (emphasis added); *see also Texas v. Biden*, 20 F.4th 928, 957 (5th Cir. 2021) (same), *rev'd on other grounds*, 597 U.S. 785 (2022). And here, EEOC (now) doesn't even dispute that the Final Rule illegally narrows the PWFA's religious exemption. Instead, it argues that because the Final Rule also violates RFRA and the PWFA's undue-hardship defense, this Court should ignore EEOC's nullification of the exemption. *See* Opp.36.

20

The government cannot escape judicial review so easily. Congress entrusted EEOC with passing rules to implement the PWFA, 42 U.S.C. §2000gg-3(a), and EEOC breached that trust by denying religious employers the very exemption Congress supplied. In every case, but especially one of statutory and constitutional overreach, "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). Yet EEOC would have this Court leave undisturbed a facially and undisputedly illegal regulation because the agency has also violated other federal laws. Opp.36. That approach would stand the APA and judicial review on their heads.

Moreover, though EEOC's concessions about RFRA and undue hardship are a step in the right direction, such defenses come second in the analysis, not first. The most fundamental question is whether the PWFA applies at all—and that's what the religious exemption asks. After all, the exemption is a threshold, "categorical" issue, *Corp. of Presiding Bishop v. Amos*, 483 U.S. 327, 340 (1987) (Brennan, J., joined by Marshall, J., concurring in the judgment), which, when triggered, provides that the PWFA "shall not apply," period, 42 U.S.C. §2000e-1(a) (incorporated by 42 U.S.C. §2000gg-5(b)). When the exemption's requirements are met, it is a "complete immunity," *Hishon v. King & Spalding*, 467 U.S. 69, 77-78 & n.11 (1984), as "all of [the PWFA] drops out," *Starkey v. Roman Catholic Archdiocese*, 41 F.4th 931, 946 (7th Cir. 2022) (Easterbrook, J., concurring).

21

The religious exemption is thus stronger medicine than RFRA and undue hardship. The latter are flexible tests, empowering courts to "strike sensible balances" between competing interests. *Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 735 (2014) (RFRA); 89 Fed.Reg. at 29,154 (undue hardship). But Congress's exemption is a categorical immunity, protecting as a matter of statute those sensitive matters of religious faith and governance on which "the First Amendment has struck the balance for us." *Hosanna-Tabor v. EEOC*, 565 U.S. 171, 196 (2012); *see infra* at pp. 23-24 (explaining exemption's constitutional roots).

That, in turn, illuminates the exemption's inherently antecedent nature. Before attempting to weigh "religious liberty and competing prior governmental interests," *Hobby Lobby*, 573 U.S. at 736, or "balance the interests of the employer and employee," 89 Fed.Reg. at 29,154, courts begin by asking if there even *is* a cognizable legal interest in applying the PWFA. Here, the exemption says there is not.

This qualitative difference plays out very practically. The exemption's categorical protection is triggered when a religious organization's employment decision is motivated by its religious beliefs or practices—a modest evidentiary showing that aims to avoid requiring intrusive investigation or discovery. Contrast that with RFRA, under which the Bishops must show not only a religious motivation, but also the existence of a substantial burden on its religion *and* defeat an opponent's attempt to justify that burden. *Hobby Lobby*, 573 U.S. at 735-36 (2014) (quoting 42

U.S.C. §2000bb(a)(5)); *see* 42 U.S.C. §2000bb-1. Contrast it also with un-due hardship, which the Final Rule expressly declines to recognize as a categorical "per se … exemption" for religious groups who invoke their "religious beliefs," deeming that position "fundamentally incon-sistent … with the PWFA." 89 Fed.Reg. at 29,153. Instead, a religious organization must make a complex, "case-by-case" showing with "individ-ualized evidence" about, for example, "the impact of the accommodation upon [its] operation[s]," including whether it would "fundamentally alter the nature or operation of" the organization. 89 Fed.Reg. at 29,153-54.

Indeed, the undue-hardship analysis poses serious risks of church-state entanglement in this sensitive religious context. A court can hardly assess whether an accommodation would "fundamentally alter" a reli-gious organization, *id.*, without "scrutinizing … how a religious [group] pursues its [religious] mission," thus causing "entanglement," *Carson v. Makin*, 596 U.S. 767, 787 (2022). And the "credibility" of a claim of undue hardship may require "assess[ing] … the importance that the [church]" actually "attaches to" the issue. *Hosanna-Tabor*, 565 U.S. at 205 (Alito, J., joined by Kagan, J., concurring). A jury may need testimony "about the importance and priority of the religious [decision] in question," and sit "in ultimate judgment of what the accused church really believes, and how important that belief is to the church's overall mission." *Id.* at 205-06. The "mere adjudication of such questions would pose grave problems for religious autonomy." *Id.*

23

But the categorical religious exemption allows religious groups and federal courts to avoid all this entanglement—which is the point. The religious exemption is a "legislative application[] of the church-autonomy doctrine," *Korte v. Sebelius*, 735 F.3d 654, 678 (7th Cir. 2013), and "recogni[zes] … the constitutionally-protected interest of religious organizations in making religiously-motivated employment decisions," *Hall v. Baptist Mem'l*, 215 F.3d 618, 623 (6th Cir. 2000). These protections afford a "threshold immunity from suit," not just a defense to liability, which "must be resolved at the earliest conceivable point in the litigation" lest the process of adjudication alone render them irreparably lost. *McRaney v. N. Am. Mission Bd.*, 157 F.4th 627, 641-645 (5th Cir. 2025), *cert. denied* (U.S. Feb. 23, 2026). The religious exemption is built on this foundation, barring claims over the Bishops' internal religious employment decisions.

EEOC's attempt to replace the religious exemption with an undue-hardship defense is especially strange. The Bishops did not plead an undue-hardship claim, ROA.63-84, largely because it is a highly factual, as-applied defense. Nor have the parties meaningfully briefed the definitive applicability of the defense to abortion-accommodation-related claims—in sharp contrast to the religious exemption claim, which the parties briefed at length. *See, e.g.*, ROA.5889-5892; ROA.5960-5964.

Moreover, EEOC's tune on undue hardship has changed. While the Commission now appears to concede that the defense operates as a threshold bar on "PWFA claim[s] or charge[s] related to abortion,"

24

Opp.19, 36, the Final Rule—again—says something very different, framing it as a "case-by-case" defense, not a "per se … exemption." 89 Fed.Reg. at 29,153-54. The Final Rule also doubts that the defense could apply when a religious organization invokes its "moral views," claiming bluntly that "nothing in the PWFA provides for an exemption that directly links the undue hardship standard to an entity's religious beliefs[ or] status." *Id.* The Final Rule is authoritative in ways that EEOC's new litigation position isn't. *Cf. Kisor v. Wilkie*, 588 U.S. 558, 579 (2019) (courts shouldn't "defer to a merely 'convenient litigating position'" particularly "when an agency substitutes one view of a rule for another").

In the end, by looking to sub in undue hardship at this late hour, EEOC asks this Court to decline review of a fully briefed and purely legal issue already ruled on below (the exemption) in favor of an unbriefed and highly fact-intensive defense whose applicability the Final Rule doubts (undue hardship). That is not how the federal judiciary assesses properly presented APA claims.

EEOC's RFRA and undue hardship concessions are insufficient for a final reason: They aren't binding in cases brought against the Bishops by private litigants, who file nearly all employment-discrimination claims. *See, e.g., FY 2025 Agency Performance Report*, EEOC, 36-38 (2025), https://perma.cc/REV8-SNW7 (in 2025, EEOC processed 88,201 discrimination charges and filed 94 discrimination lawsuits). And private litigants are the ones EEOC insists on authorizing to sue the Bishops.

\* \* \*

As it has now done across two administrations, EEOC tries to scramble the signal. It cannot bring itself to defend its evisceration of the religious exemption, which leaves ministries like the Bishops' exposed to the vicissitudes of future bureaucratic leadership and private litigants. Instead, it reups the distract-and-delay strategy it deployed below.

There, under the prior administration, EEOC first tried to obfuscate its own legal position on the scope of the religious exemption, before then arguing that the district court should not resolve the religious exemption at all since religious defenses like RFRA and undue hardship "may well apply" in future disputes over the Bishops' religious practices. ROA.5889-5892; *see also* ROA.6910-6916 (Bishops' response noting that while EEOC obfuscated below, it simultaneously urged the Ninth Circuit to affirm its narrow views). Now EEOC is back at it again, asking this Court to decline review of a purely legal APA count with tremendous significance for religious ministries, all because the Final Rule might be held in future litigation to violate other religious protections. Neither the APA nor the PWFA allows the Bishops to be thus left exposed to changing agency views, the plaintiffs' bar, and case-by-case judicial balancing. This Court should confirm that the PWFA's religious exemption means what it says.

26

## C. The Bishops are entitled to a permanent injunction under their RFRA and First Amendment claims.

EEOC provides no opposition to the merits of the Bishops' RFRA and First Amendment claims. As noted, EEOC now concedes that it cannot compel the Bishops to accommodate abortions under RFRA. Opp.32-33. Contrary to its position below, EEOC agrees that the threat of substantial fines and penalties for failing to accommodate employees' abortions would substantially burden the Bishops' religious beliefs. Opp.32-33; *but see* ROA.5886-87 (EEOC position below). And, also contrary to its position below and its Final Rule, EEOC says that it "plainly lack[s] any compelling interest in refusing to exempt" the Bishops from abortion-accommodation requirements. Opp.34-35; *but see* ROA.5887 (EEOC position below); 89 Fed.Reg. at 29,150 & n.261 (asserting compelling government interest).

And, other than a single sentence seeking to "mechanical[ly]" avoid "constitutional questions … readily resolved by … precedent[]," *Landor v. Louisiana Department of Corrections*, No. 23-1197, 2026 WL 1791277, at *4 n.1 (U.S. June 23, 2026), EEOC doesn't raise *any* dispute that the First Amendment—through church autonomy, free exercise, and expressive association—also protects the Bishops from the abortion-accommodation mandate. Nor could it.

First, the mandate plainly violates the church autonomy doctrine, forcing the Bishops to retain representatives who violate Catholic teaching, Br.43-44, change their own religious speech and police their employees' speech about the morality of abortion, Br.45-46, operate under EEOC surveillance of day-to-day operations, Br.46-47, and endure entangling investigations and litigation, Br.48-50. Allowing EEOC to intrude into churches in this manner would drastically undermine their right to form communities of shared belief and carry out their core religious missions. *See, e.g.*, Summit Ministries Br.8-11; JCRL Br.3-10.

Second, the mandate violates the Free Exercise Clause, imposing burdens that EEOC concedes exist to achieve ends that EEOC concedes aren't compelling, all as a part of a regulatory scheme that the federal government has suggested in ongoing litigation is not generally applicable. Br.55-56. That falls far short of what free exercise protections require. *See, e.g.*, CLS Br.19-22.

Finally, and for similar reasons, the mandate violates the Bishops' freedom of expressive association. EEOC concededly has no good reason to force the Bishops to have their ministries formally represented by individuals who openly reject their beliefs on abortion and undermine their mission to express their beliefs about the sanctity of life. Br.56-57; CLS Br.6-16.

28

## CONCLUSION

The Bishops respectfully request that this Court reverse and remand with instructions to vacate the Final Rule's abortion-accommodation mandate and unlawful construction of the statutory religious exemption, and enter permanent injunctive and declaratory relief for the Bishops.

Dated: July 8, 2026                              Respectfully submitted,

                                                 /s/ *Daniel H. Blomberg*
JAMES R. CONDE                                   DANIEL H. BLOMBERG
WALKER FORTENBERRY                               LAURA WOLK SLAVIS
BOYDEN GRAY PLLC                                 ANDREA R. BUTLER
800 Connecticut Ave. NW                          JORDAN T. VARBERG
    Suite 900                                    BENJAMIN A. FLESHMAN
Washington, DC 20006                             THE BECKET FUND FOR
(202) 955-0620                                       RELIGIOUS LIBERTY
                                                 1919 Pennsylvania Ave. NW
                                                     Suite 400
                                                 Washington, DC 20006
                                                 (202) 955-0095

*Counsel for Plaintiffs-Appellants*

29

## CERTIFICATE OF SERVICE

I certify that on July 8, 2026, I electronically filed the foregoing with the Clerk of Court for the U.S. Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. All counsel of record who are registered CM/ECF users will be served by the court's electronic filing system.

/s/ *Daniel H. Blomberg*
Daniel H. Blomberg

# CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this brief complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) because it contains 6,486 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft 365 (the same program used to calculate the word count).

/s/ *Daniel H. Blomberg*
Daniel H. Blomberg


Dated:    July 8, 2026